**In the Matter of John J. FIHE.**

**No. 27S00–9210–DI–878.**

Supreme Court of Indiana.

Sept. 19, 1997.

No appearance for Respondent.

Donald R. Lundberg, Executive Secretary, Charles M. Kidd, Staff Attorney, Indianapolis, for the Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

The Disciplinary Commission charges that the respondent, John J. Fihe, neglected the legal affairs of a client and misrepresented facts about the representation to a tribunal. A hearing officer appointed by this Court to hear this matter concluded, following full evidentiary hearing, that the respondent neglected his client's case but that he did not misrepresent facts. This matter is now before this Court for final resolution. The respondent's 1982 admission to this state's bar confers disciplinary jurisdiction.

We now find that a client suffered injuries when he fell into a hole on a bridge in Marion, Indiana, on August 11, 1986. He retained the respondent to represent him in seeking damages from the city of Marion, Grant County, and any railroad which might have been liable for upkeep of the bridge (hereinafter the "bridge case"). On December 1, 1986, the respondent agreed to represent the client, initially considering the city of Marion, Grant County, and four separate railroad companies to be potential defendants in the contemplated suit. The respondent also agreed to represent the client in a second personal injury case arising out of an automobile accident which occurred on September 16, 1986. After the agreement, the client forwarded to the respondent a proposed contract of representation. The respondent felt the proposed contract was unreasonable and did not sign it or discuss it with the client. During some of the time the respondent represented the client, the client was incarcerated in the Grant County Jail. Later, the client moved from Marion to Michigan. Because of these circumstances, the respondent found it difficult to arrange personal meetings with his client and, in fact, they never met face to face. Instead, they spoke by telephone 15 or 20 times during the entire course of representation.

The respondent filed a complaint relative to the client's automobile accident claim on September 9, 1988, although the suit was later dropped at the client's direction. During his preliminary investigation of the bridge case, the respondent obtained the client's medical records relative to the injuries the client sustained and took photographs of the bridge. He reviewed Marion's "bridge book" and a maintenance contract between the city and the railroads. After reviewing the materials, the respondent believed Marion and the county were not proper defendants in the contemplated suit.

The respondent prepared a complaint seeking relief from the railroads. A member of his office staff filed it in Grant Superior Court on August 11, 1988. However, the respondent failed to cause a summons to be served on the defendants, a fact which the respondent failed to notice until disciplinary proceedings were initiated in this case. Although the respondent engaged in informal discussions with railroad representatives regarding his client's case, the railroads did not mention they had not received a summons.

Despite his work on the client's case, the respondent's relationship with his client began to deteriorate after the respondent received the client's proposed representation contract on March 29, 1988. The client claimed that the respondent's legal work for the city of Marion in other matters prevented him from zealously representing his interests in the bridge case. On October 31, 1989, the client informed the respondent that he had hired other counsel and that his services were no longer needed. The respondent told the client he would forward to him the appropriate case file materials upon learning his address, but the client failed to inform the respondent of his address.

On February 5, 1990, the client sent a letter to the Commission which alleged that the respondent had a conflict of interest in the bridge case, that he gave the client "the run around," and that he "doesn't answer my letters." In response to the letter, the Commission forwarded a grievance form to the client. The client returned the grievance to the Commission, stating therein that the respondent's legal work for the city of Marion presented a conflict of interest with his representation of the client in the bridge case, and that the respondent failed to return to the client his case file after termination of the representation. The grievance did not allege that the respondent failed to effect service of process in the bridge case. Accordingly, in responding to the grievance, the respondent focused on the alleged conflict of interest. The Commission later dismissed the grievance.

Beginning December 5, 1991, the respondent ceased representing the client in the bridge case consistent with a letter he received from the client that day. On December 12, 1991, the railroads filed a motion to dismiss the bridge case, apparently due to the respondent's failure to issue a summons. The respondent was never forwarded copies of the motion to dismiss. On December 19, 1991, the trial court granted the respondent's motion to withdraw.

The day after the respondent ceased representing the client, the client again wrote to the Commission, alleging that the respondent had a conflict of interest and that he failed to contact the bridge case defendants for five years. Again, the Commission forwarded to the client a grievance form, which the client filled out and returned to the Commission. Like the letter, the grievance complained of a conflict of interest. The Commission forwarded a copy of the grievance to the respondent on February 10, 1992, requesting a response. The respondent again addressed the conflict of interest issue. The Commission filed a *Verified Complaint for Disciplinary Action* on October 29, 1992, in which it alleged that the respondent generally neglected his client's cases and that he knowingly made a false statement of material fact to the Grant Superior Court and to the Commission.

The hearing officer concluded that the respondent "neglected" the client's bridge case and therefore violated Ind.Professional Conduct Rules 1.3 and 1.4.[1] He found further,

---

1. Professional Conduct Rule 1.3 provides:

A lawyer shall act with reasonable diligence and promptness in representing a client.

however, that the Commission failed to demonstrate, as it charged in its *Verified Complaint,* that the respondent violated Prof. Cond.R. 3.3(a)(1) or Prof.Cond.R. 8.1, and that therefore he could not be found to have violated Prof.Cond.R. 8.4(a) and 8.4(d) as those charges related to any alleged misrepresentations to a tribunal or the Commission.[2]

■ Where the findings of the hearing officer are unchallenged, we accept them with the understanding that this Court is the final arbiter of attorney misconduct and sanction. *In re Stover–Pock,* 604 N.E.2d 606 (Ind.1992). The hearing officer found that although the respondent investigated his client's claims, filed two complaints on his behalf, and later negotiated with the defendants, he failed to ensure a summons had been issued and served on the defendants. That failure ultimately threatened his client's cause of action. We therefore find that the respondent failed to act with reasonable diligence on behalf of his client in violation of Prof.Cond.R. 1.3. We also find that, between September 1986 and December 1991, the respondent failed to respond promptly to all of his client's reasonable requests for information about the bridge case and failed to ensure that the client was adequately apprised of the status of the case. We find, therefore, that he violated Prof.Cond.R. 1.4.

■ There is nothing in the record indicating that the respondent misled the Commission in his response to the grievances or during resolution of this case. The client's grievances alleged that the respondent engaged in a conflict of interest, but made no

mention of a failure to issue a summons in the bridge case. The hearing officer found that the respondent "diligently and thoroughly" addressed the only issue presented in the grievances, that being the alleged conflict. We thus find no violation of Prof.Cond.R. 8.1. The hearing officer also found that the Commission failed to present any evidence that the respondent attempted to mislead the Grant Superior Court.[3] Accordingly, we find that the Commission failed to demonstrate that the respondent violated Prof.Cond.R. 3.3(a)(1).

■ Our finding that the respondent failed to act with proper diligence and that he failed to adequately communicate with his client requires us to assess an appropriate discipline. The hearing officer recommended that the respondent receive a public reprimand, finding that the respondent's misconduct was not motivated by malice or ill will but rather resulted from a failure to devote necessary attention to all aspects of his client's case. The respondent thoroughly investigated the bridge case and managed to file a cause of action. After that, however, he failed to ensure that all necessary papers had been filed and did not provide to his client full and complete information regarding the progression of the case. However, because the misconduct in this case appears to have been inadvertent and isolated, we are satisfied that the respondent does not represent a continuing threat to the public or to the profession and that, accordingly, a public reprimand is sufficient.

Accordingly, the respondent, John J. Fihe, is hereby reprimanded and admonished for the misconduct set out above.

Professional Conduct Rule 1.4 provides:
(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
(b) a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

2. Professional Conduct Rule 3.3(a)(1) provides that a lawyer shall not knowingly make a false statement of material fact or law to a tribunal. Professional Conduct Rule 8.1 provides, in relevant part, that a lawyer in connection with a disciplinary matter shall not knowingly make a false statement of material fact or fail to disclose

a fact necessary to correct a misapprehension known by the person to have arisen in the matter. Professional Conduct Rules 8.4(a) and (d) prohibit a lawyer from violating or attempting to violate the Rules of Professional Conduct or engaging in conduct that is prejudicial to the administration of justice.

3. The *Verified Complaint* alleges that when the respondent moved to withdraw from the client's case on December 19, 1991, he falsely informed the trial court that the client had retained successor counsel. The hearing officer found that, during hearing, the Commission stated that it was not pursuing that violation.

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the Federal District Courts in this state, and the clerk of the United States Bankruptcy Court in this state with the last known address of respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.